IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JULIE MARIE BOWKER, | ) | CASE NO.  5:23-CV-00990-JDG |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| vs. | ) | JONATHAN D. GREENBERG |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER** |
| | ) | |

Plaintiff, Julie Marie Bowker ("Plaintiff" or "Bowker"), challenges the final decision of Defendant, Martin O'Malley,[1] Commissioner of Social Security ("Commissioner"), denying her application for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and the consent of the parties, pursuant to 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is VACATED AND REMANDED for further consideration consistent with this opinion.

## I.       PROCEDURAL HISTORY

In October 2017, Bowker filed an application for POD and DIB, alleging a disability onset date of June 25, 2016,[2] and claiming she was disabled due to fibromyalgia, numbness in hands, memory loss, and

---

[1] On December 20, 2023, Martin O'Malley became the Commissioner of Social Security.

[2] As the ALJ notes, "Both procedurally and substantively significant to this decision is the fact that the claimant had appealed through the ALJ hearing level a prior Title II application on June 18, 2014, the initial and reconsideration denial determinations made on which was ultimately affirmed by a **June 24, 2016** decision of ALJ Mary Lohr (Ex. C1A). Just as importantly, ALJ Lohr's decision became the administratively final decision of the claimant being "not disabled" from the previously alleged onset date on March 1, 2013 through June 24, 2016, by effect of the Appeals Council's July 25, 2017 denial of the

sleeping issues. (Transcript ("Tr.") at 93, 548.)  The application was denied initially and upon reconsideration, and Bowker requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 15.)

On August 22, 2019, an ALJ held a hearing, during which Bowker, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id.*)  On September 9, 2019, the ALJ issued a written decision finding Plaintiff was not disabled.  (*Id.* at 15-24.)  The ALJ's decision became final on July 29, 2020, when the Appeals Council declined further review.  (*Id.* at 1-6.)

Bowker filed a complaint to challenge the Commissioner's final decision.  (*See id.* at 634-35.)  On June 2, 2021, on joint stipulation of the parties, the Court remanded the case back to the Commissioner for further administrative proceedings pursuant to Sentence Four of Section 205 of the Social Security Act, 42 U.S.C. § 405(g).  (*Id.* at 636.)

On March 26, 2022, the Appeals Council vacated the final decision of the Commissioner and remanded the case to another ALJ for resolution.  (*Id.* at 638, 640-41.)  On remand, the ALJ was to:

- Further consider the severity of the claimant's FM in accordance with Social Security Ruling 12-2p. If FM is found severe, discuss why the impairment does or does not medically equal a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1, and how it is accommodated in the RFC.

- Consider the medical source opinions of Dr. Singh pursuant to the provisions of 20 CFR 404.1520c. The ALJ may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's medical source.

- Give further consideration to the claimant's maximum RFC and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 85-16 and 96-8p).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on

claimant's request for review thereof (Ex. C2A; *and see* Ex. C3A/2)."  (Transcript ("Tr.") at 547) (emphasis in original).  The alleged onset date is the day after ALJ Lohr's decision.  (*Id.* at 548.) Therefore, the relevant period in this appeal consists of a six-day period from June 25, 2016, the alleged onset date, to June 30, 2016, Bowker's date last insured.

> the claimant's occupational base (Social Security Ruling 96-9p). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The ALJ will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence, the ALJ will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(*Id.* at 641.)

On January 18, 2023, an ALJ held a hearing, during which Bowker, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id.* at 547.)  On February 10, 2023, the ALJ issued a written decision finding Plaintiff was not disabled.  (*Id.* at 546-74.)  Bowker declined to submit a request for review to the Appeals Council, choosing instead to file an appeal directly with this Court.  (Doc. No. 6 at 2.)

On May 16, 2023, Bowker filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 6, 8.)  Bowker asserts the following assignments of error:

(1) The ALJ erroneously failed to comply with the previous order of this Court and failed to support his determination with substantial evidence.

(2) The ALJ failed to support his RFC with substantial evidence when he applied the wrong standard of review by adopting the findings of the prior Administrative Law Judge.

(3) The ALJ erred when he improperly assessed the opinion of the treating source and failed to support his conclusion with substantial evidence.

(4) The ALJ erred and his decision was not supported by substantial evidence as he failed to properly evaluate Plaintiff's fibromyalgia at Step Three of the Sequential Evaluation.

(Doc. No. 6.)

## II.      EVIDENCE

### A.      Personal and Vocational Evidence

Bowker was born in November 1971 and was 44 years-old at the time of her date last insured (Tr. 572), making her a "younger" person under Social Security regulations.  *See* 20 C.F.R. § 404.1563(c).  She has at least a high school education.  (Tr. 572.)  She has past relevant work as a teacher's aide and retail cashier.  (*Id.* at 571-72.)

### B.      Relevant Medical Evidence[3]

On December 6, 2016, Bowker saw Gregory Bonavita, M.D., for her two-year follow up appointment regarding her POTS, VPCs, and palpitations.  (*Id.* at 288.)  Bowker endorsed continued occasional positional lightheadedness but denied headache, confusion, visual disturbance, and shortness of breath.  (*Id.*)  Bowker reported good compliance with treatment, that her symptoms were improving, and that she was better.  (*Id.*)  Bowker denied chest pain, claudications, difficulty breathing with exertion, fainting/blacking out, leg pain and/or swelling, palpitations, shortness of breath, joint pain, and muscle pain.  (*Id.* at 289.)  A physical examination of the chest, lungs, cardiovascular system, abdomen, peripheral vascular system, and neurological system revealed normal findings.  (*Id.* at 290.)  Dr. Bonavita found a normal gait and station, normal muscle strength and tone, and no impairment of recent or remote memory.  (*Id.*)  Dr. Bonavita determined Bowker's POTS was stable on her current regimen, her VPCs were suppressed by her current regimen, and her intermittent palpitations were better.  (*Id.* at 291.)  Bowker was to follow up in two years.  (*Id.*)

On March 22, 2017, Bowker saw Inderprit Singh, M.D., for sores on her scalp and breast.  (*Id.* at 335.)  Bowker also endorsed long-standing oral sores, localized neck pain, localized low back pain that

---

[3] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.  In addition, as Bowker challenges only the ALJ's physical findings, the Court further limits its discussion of the evidence to Bowker's physical impairments.

was worse with weight bearing, pain in the shoulders, elbows, wrists, hands, hips, knees, ankles, and feet, and fatigue.  (*Id.*)  Bowker reported her dizziness and asthmas were stable.  (*Id.*)  On examination, Dr. Singh found diffuse myofascial tenderness; tender points bilaterally in the suboccipital, low cervical, trapezius, supraspinatus, gluteal, greater trochanteric, second rib, lateral epicondylar, and knee medial fat pad areas; two open ulcers on the left breast; and a sore folliculitis scalp.  (*Id.* at 337.)  Dr. Singh noted she had been on high dose gabapentin for over six years.  (*Id.*)  Dr. Singh instructed Bowker to see a GI to determine if she had inflammatory bowel disease.  (*Id.*)

That same day, Bowker completed a yearly ADL Assessment Questionnaire and reported she was "independent" in bathing, dressing both upper body and lower body, grooming, hygiene, and "home management" areas (including laundry, cleaning, chores, and simple meal preparation).  (*Id.* at 363-64.)

On January 30, 2018, Dr. Singh completed a Medical Assessment of Ability to Do Work-Related Activities (Physical).  (*Id.* at 330-33.)  Dr. Singh opined that Bowker could "regularly work" two to three hours a day and would be absent 10-15 days per month.  (*Id.* at 330.)  Dr. Singh further opined that standing and walking were affected by Bowker's impairments, and that she could stand/walk for a total of two hours in an eight-hour workday and "1/10 hours" without interruption.  (*Id.*)  Dr. Singh listed POTS as the medical findings supporting his opinion regarding Bowker's ability to stand and walk.  (*Id.*)  Dr. Singh further opined sitting was not affected by Bowker's impairments, and that she could sit for four hours in an eight-hour workday and sit for half an hour without interruption.  (*Id.* at 331.)  Dr. Singh did not identify any medical findings to support his opinion regarding Bowker's ability to sit.  (*Id.*)  Dr. Singh further opined Bowker's ability to lift and carry was affected by her impairments, and that she could occasionally carry 10 pounds and frequently carry five pounds.  (*Id.*)  Dr. Singh cited treatment notes from September 2017 and December 2017 in support of his opinion regarding Bowker's ability to lift and carry. (*Id.*)

5

Dr. Singh further opined Bowker could occasionally climb, balance, stoop, crouch, kneel, and crawl.  (*Id.*)  Dr. Singh did not identify any medical findings to support his opinion regarding Bowker's postural limitations.  (*Id.*)  Dr. Singh further opined Bowker could occasionally reach, handle, finger, feel, and push/pull.  (*Id.* at 332.)  Dr. Singh did not identify any medical findings to support his opinion regarding these limitations.  (*Id.*)  Dr. Singh further opined Bowker should avoid heights, moving machinery, and temperature extremes because of her dizziness and mental fog.  (*Id.*)  Dr. Singh opined other impairments affected Bowker's ability to work eight hours a day, five days a week, and cited December 2017 treatment notes in support.  (*Id.* at 333.)  Dr. Singh stated he had been treating Bowker since March 2013 and her conditions had existed for more than five years.  (*Id.*)

On May 10, 2019, Dr. Singh wrote a letter stating that Bowker was unable to work because of her medical conditions.  (*Id.* at 354.)  Dr. Singh opined Bowker had failed conservative treatment and he did not anticipate Bowker being able to work in the next twelve months.  (*Id.*)  Dr. Singh noted he had advised Bowker to file for disability.  (*Id.*)

On June 30, 2019, Dr. Singh completed another Medical Assessment of Ability to Do Work-Related Activities (Physical).  (*Id.* at 444-47.)  Dr. Singh opined that Bowker could "regularly work" 0 hours a day and would be absent 30 days per month.  (*Id.* at 444.)  Dr. Singh further opined that standing and walking were affected by Bowker's impairments, and that she could stand/walk for a total of one hour in an eight-hour workday and "1/10 hours" without interruption.  (*Id.*)  Dr. Singh listed June 2019 treatment notes as the medical findings supporting his opinion regarding Bowker's ability to stand and walk.  (*Id.*)  Dr. Singh further opined sitting was affected by Bowker's impairments, and that she could sit for four hours in an eight-hour workday and sit for 1/6 of an hour without interruption.  (*Id.* at 445.)  Dr. Singh listed June 2019 treatment notes as the medical findings supporting his opinion regarding Bowker's ability to sit.  (*Id.*)  Dr. Singh further opined Bowker's ability to lift and carry was affected by her

impairments, and that she could occasionally carry 5 pounds and frequently carry five pounds.  (*Id.*)  Dr. Singh cited June 2019 treatment notes as the medical findings supporting his opinion regarding Bowker's ability to lift and carry.  (*Id.*)

Dr. Singh further opined Bowker could less than occasionally climb, balance, and stoop, and that she could never crouch, kneel, and crawl.  (*Id.*)  Dr. Singh listed June 2019 treatment notes as the medical findings supporting his opinion regarding Bowker's postural limitations.  (*Id.*)  Dr. Singh further opined Bowker could less than occasionally reach, handle, finger, feel, and push/pull.  (*Id.* at 447.)  Dr. Singh listed June 2019 treatment notes as the medical findings supporting his opinion regarding these limitations.  (*Id.*)  Dr. Singh further opined Bowker should avoid humidity, vibrations, and "other."  (*Id.*)  Dr. Singh listed June 2019 treatment notes as the medical findings supporting his opinion regarding Bowker's need for environmental restrictions.  (*Id.*)  Dr. Singh again opined other impairments affected Bowker's ability to work eight hours a day, five days a week, and cited June 2019 treatment notes in support.  (*Id.* at 446.)  Dr. Singh stated he had been treating Bowker since 2013.  (*Id.*)

In January 2023, Dr. Singh completed a Physical Medical Source Statement.  (*Id.* at 1152-55.)  Dr. Singh reported he had treated Bowker since 2013 and her diagnoses consisted of fibromyalgia, small nerve fiber neuropathy, chronic neck pain, and chronic back pain.  (*Id.* at 1152.)  Dr. Singh listed fatigue, generalized body pain, and frequent headaches as Bowker's symptoms and cited to December 2022 treatment notes in support.  (*Id.*)  Dr. Singh opined Bowker could sit for 30 minutes before needing to get up and stand for 15 minutes before needing to sit down.  (*Id.* at 1153.)  She could sit and stand/walk for less than two hours in an eight-hour workday.  (*Id.*)  Bowker would need to walk around for three minutes every half hour.  (*Id.*)  She would need unscheduled five to fifteen-minute breaks because of her muscle weakness, chronic fatigue, and pain/paresthesias and numbness.  (*Id.*)  She did not need to elevate her legs.  (*Id.*)  Bowker needed to use a cane for standing and walking because of imbalance, weakness, and dizziness.  (*Id.*

at 1154.) She had used a cane since 2019. (*Id.*) Dr. Singh opined Bowker could rarely lift and carry 10 pounds and less than 10 pounds. (*Id.*) She could use her hands, fingers, and arms 15% of an eight-hour day to grasp, turn, and twist objects, perform fine manipulations, reach in front of her body, and reach overhead. (*Id.*) Bowker would be off task for 25% or more of a typical workday. (*Id.*) Dr. Singh opined Bowker was incapable of even low stress work. (*Id.*) Bowker would be absent more than four days a month. (*Id.* at 1155.)

On October 25, 2017, Bowker and her husband completed an Adult Function Report. (*Id.* at 221-28.) Bowker reported her impairments prevented her from lifting, frequently stooping, crawling, and climbing. (*Id.* at 221.) She cannot work the fast-paced jobs she used to do. (*Id.*) She cannot stand long because she gets severe pain. (*Id.*) It hurts her hands to open and close doors or even use a key. (*Id.*) She must elevate her legs, or they hurt from being down. (*Id.*) Her pain keeps her from sleeping unless she sleeps in a warm tub of water. (*Id.*) She spends her days washing up, getting dressed, and then sitting on the couch with her feet up on a stool until bedtime. (*Id.* at 222.) Her husband cares for their cat. (*Id.*) Her husband helps her dress, bathe, do her hair, and shave. (*Id.*) She could feed herself, although she cannot stand to cook, and she can use the toilet with severe pain. (*Id.*) She usually wears a nightgown all day because it hurts to change clothes. (*Id.* at 223.) She needs reminders from her husband to take her medicine. (*Id.*) Her husband or her daughter prepare meals and freeze them so she can just microwave them. (*Id.*) Her husband and daughter do the indoor and outdoor chores. (*Id.*) Her husband drives so she doesn't have to drive. (*Id.* at 224.) She sits in the back seat with her legs stretched out since it hurts too much to leave them down for long. (*Id.*) Her husband does the shopping. (*Id.*) Every once in a while, she will shop using a cart, but it hurts her back, so she does not spend much time in the store. (*Id.*) Her husband pays the bills. (*Id.*) She spends most of her time watching TV because it is all she can do. (*Id.* at 225.) Her parents and her two children visit her at her house once a month. (*Id.*) She doesn't go

8

anywhere.  (*Id.*)  Her husband accompanies her to the doctor.  (*Id.*)  She does not have problems getting along with others.  (*Id.* at 226.)  She has poor concentration because of her pain and poor memory because of "fibro fog."  (*Id.*)  She can walk a little less than half a block before needing to sit with her feet up, and the pain is bad afterwards.  (*Id.*)  She cannot pay attention for long.  (*Id.*)  Her short-term memory problems interfere with her ability to follow spoken instructions.  (*Id.*)  She uses a walker every once in a while and uses a cane sometimes to get off the toilet or if she is in pain.  (*Id.*)  She is in pain all the time.  (*Id.* at 228.)

**C.      State Agency Reports**

On December 17, 2017, Stephen Sutherland, M.D., reviewed the file and determined there was "insufficient evidence to fully evaluate the severity" of Bowker's allegations and no comment could be made regarding the September 24, 2016 ALJ decision.  (*Id.* at 97-98.)

On March 19, 2018, on reconsideration, William Bolz, M.D., reviewed the file and determined Bowker could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday.  (*Id.* at 111.)  Her ability to push and/or pull was unlimited, other than shown for lift and/or carry.  (*Id.*)  Dr. Bolz provided the following explanation:

> I have looked at the final findings of the ALJ RFC dated 6/24/2016 and find that the new file does have new and material changes.  The ALJ RFC is not being adopted because the medical evidence from the relevant period for this filing does not support the severity of limitations give [sic] at ALJ [sic].  While the ALJ decision was made just prior to the current filing's relevant time period, the ALJ decision covered a larger time period with additional evidence which may have supported the more restrictive RFC.  However, MER from the current relevant time period which is more restricted does not support the same limitations.

(*Id.*)

9

**D.**    **Hearing Testimony**

During the January 18, 2023 hearing, Bowker testified to the following:

- She has a valid driver's license with no medical restrictions.  (*Id.* at 587.)

- She cannot work because of her widespread, chronic pain.  (*Id.* at 591.)  She has fibromyalgia from head to toe.  (*Id.*)  She has numbness in her fingertips, legs, toes, and ankles.  (*Id.*)  Her back, neck, and hips hurt all the time.  (*Id.*)  The pain is unbearable.  (*Id.*)  When she was first diagnosed, she had 18 pressure points.  (*Id.* at 592.)  Her doctor did not want to do them for a while, but she finally got him to do a trigger point assessment this year.  (*Id.*)  He only did part of them because he said she was in too much pain, but she thought she had 12 trigger points.  (*Id.*)  She does not get much sleep, she has brain fog, and she is fatigued all day long.  (*Id.*)  She has severe memory problems and poor concentration.  (*Id.*)  Her hands and legs and everything ache all day.  (*Id.*)  She gets headaches, which could be from her lack of sleep.  (*Id.*)  She gets dizzy if she stands up too fast or bends down too fast.  (*Id.* at 596.)  She almost passed out doing physical therapy exercises.  (*Id.*)  She gets dizzy after being on the elevator.  (*Id.*)  She was diagnosed with POTS in 2011.  (*Id.*)  All of her problems she had before 2016.  (*Id.*)  She was trying to get disability because of her POTS and fibromyalgia.  (*Id.*)  She has numbness in her fingers, hands, toes, feet, and legs.  (*Id.* at 598.)  She gets headaches every day.  (*Id.*)  She has trouble holding things.  (*Id.* at 600.)  She has trouble locking doors.  (*Id.*)  She can only write a line or two of a grocery list before she needs to rest her hands and fingers because they tingle and go numb.  (*Id.*)  She does not type on her smartphone.  (*Id.*)  If she tried to work, she would miss more days than she would be at work.  (*Id.* at 601-02.)

- She can walk a short distance from her house to the mailbox and back, but when she gets back, she will be in pain all day.  (*Id.* at 594.)  She could lift five to ten pounds, but the last time she picked anything up, her back popped, her hip was worse, and she needed to go to the hospital.  (*Id.*)

- On a typical day, she gets out of bed, brushes her teeth, and tries to shower.  (*Id.*)  Showering is exhausting because she has to use her arms to wash her hair, and then her arms are painful afterwards.  (*Id.*)  She then has to get out and walk downstairs, which causes more pain in her legs.  (*Id.*)  Her husband makes her breakfast or dinner.  (*Id.*)  She sits on the couch with her legs up on a loveseat or footstool.  (*Id.* at 595.)  Her legs have to be stretched out or they hurt for days.  (*Id.*)  She gets pain in her back and shoulders if she stands for too long.  (*Id.*)  She can only sit with her legs elevated over hip height.  (*Id.* at 599.)  She can only sit in a regular chair with her legs down for maybe 20 minutes.  (*Id.*)  After that, she would need to go to another spot to elevate her legs.  (*Id.*)

- She used to write poetry, but she cannot write anymore because it hurts her hands.  (*Id.* at 595.)  She cannot dance anymore because if she moves the wrong way, her back and hips go out and she is a lot of pain.  (*Id.*)  She used to like driving, but she

cannot drive anymore because if she tries to drive, she is in so much pain that she is in bed for three to four days.  (*Id.*)

- Her doctor did not prescribe a cane; he told her she could buy a cheap one at the store.  (*Id.* at 597.)  She ended up buying two canes.  (*Id.*)  She uses the cane for balance "probably about every day."  (*Id.*)  She has one bad leg.  (*Id.*)  Her left leg has no feeling it from her knee down to her toes.  (*Id.*)  She has fallen a few times and ended up in the hospital.  (*Id.*)  She uses a cane to walk and stand.  (*Id.*)  She can stand without the cane, but she has to lean on something.  (*Id.* at 598.)

The VE testified Bowker had past work as a teacher aide, cashier II, and companion.  (*Id.* at 603.)

The ALJ then posed the following hypothetical question:

> Please assume a hypothetical individual of the claimant's age and education with the past jobs described.  Further assume that the individual is limited to the full range of light with the following additional limitations.  Climbing ramps and stairs is limited to occasional.  Climbing ladders, ropes, or scaffolding is limited to never.  Balancing, stooping, kneeling, crouching, and crawling are all limited to occasional.  The hypothetical individual can never work at unprotected heights and never with moving machinal parts, is limited to working in extreme cold and extreme heat are both limited to only occasion [sic].  The hypothetical individual is able to perform simple routine and repetitive tasks, but not at a production rate pace, for example, assembly line work.  The hypothetical individual is able to make simple work-related decisions.  Can the hypothetical individual perform any of the past work you described?

(*Id.* at 603-04.)

The VE testified the hypothetical individual would be able to perform Bowker's past work as a cashier.  (*Id.* at 604.)  The VE further testified the hypothetical individual would also be able to perform other representative jobs in the economy, such as mail sorter and merchandise marker.  (*Id.*)

The ALJ modified the hypothetical to change the level of exertion to sedentary.  (*Id.* at 605.)   The VE testified the hypothetical individual would not be able to perform Bowker's past work.  (*Id.*)  The VE further testified the hypothetical individual would be able to perform other representative jobs in the economy, such as call-out operator, document preparer, and addresser.  (*Id.* at 605-06.)

In response to questioning from Bowker's counsel, the VE testified that a limitation to standing one hour and sitting four hours would preclude all work in the national economy.  (*Id.* at 607.)  In

11

additional, a limitation to occasional fingering and handling would also preclude all the jobs listed at light and sedentary, and it would preclude all sedentary work.  (*Id.* at 607-08.)

### III.     STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. § 404.1520(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. § 404.1520(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. § 404.1520(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. § 404.1520(d).  Fourth, if the claimant's impairment or combination of impairments does not prevent her from doing her

12

past relevant work, the claimant is not disabled.  20 C.F.R. § 404.1520(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, Bowker was insured on her alleged disability onset date, June 25, 2016, and remained insured through June 30, 2016, her date last insured ("DLI").  (Tr. 548-49.)  Therefore, in order to be entitled to POD and DIB, Bowker must establish a continuous twelve-month period of disability commencing between these dates.  Any discontinuity in the twelve-month period precludes an entitlement to benefits.  *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant last met the insured status requirements of the Social Security Act on June 30, 2016.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 25, 2016 through her date last insured of June 30, 2016 (20 CFR 404.1571 *et seq.*).

3.    Through the date last insured, the claimant had the following severe impairments: fibromyalgia, osteoarthritis of the bilateral hips and shoulders, postural orthostatic tachycardia syndrome (POTS), small fiber peripheral neuropathy, and anxiety disorder and depressive disorder (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work, as defined in 20 CFR 404.1567(a), except that she is further limited in the following non-exertional respects:

- Can never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs, and can occasionally balance, stoop, crouch, kneel, and crawl;
- Can never work at unprotected heights or around moving mechanical parts, and can only have occasional exposure to extreme heat or extreme cold; and
- Is able to perform simple, routine, and repetitive tasks but not at a production rate pace, and is able to make simple work-related decisions.

6.    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on November **, 1971 and was 44 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8.    The claimant has at least a high school education (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*see* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from June 25, 2016, the alleged onset date, through June 30, 2016, the date last insured (20 CFR 404.1520(g)).

(Tr. 551-74.)

## V.    STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a

14

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

15

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

Bowker argues the ALJ applied the wrong standard of review, as the ALJ found "no new and material evidence reflecting a need for a substantial change" to Bowker's RFC, applied AR 98-4(6), which is based on *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), and adopted the previous ALJ's findings.  (Doc. No. 6 at 10.)  Bowker asserts that this was error and contrary to applicable law.  (*Id.*)  Bowker argues that the ALJ "erroneously failed to consider any of the new medical evidence when setting forth his opined limitations and failed to comply with the Order of the Appeals Council regarding the remand of the proceedings."  (*Id.*)  In addition, the ALJ "acknowledged" that the alleged onset date was June 25, 2016, which post-dated the previous ALJ decision.  (*Id.*)  Therefore, the application was for a new period of disability.  (*Id.*)  After a lengthy discussion of medical evidence, Bowker argues that the medical records and testimony cited show "new and material changes" in her impairments since her new application was filed, which warranted a different finding.  (*Id.* at 14.)  Bowker relies on this Court's decision in *DiLauro v. Commissioner of Social Security*, Case No. 5:19cv2961, 2021 WL 1175414, at **3-4 (N.D. Ohio Mar. 29, 2021) and asserts:

16

> As in [*DiLauro*], the ALJ's adoption of the findings of the prior ALJ casts a pall over the entire hearing as Plaintiff faced an unwarranted presumption that the findings of the prior hearing were correct. In this matter, the ALJ adopted the findings of the prior ALJ, who had adopted the findings of the previous ALJ, and failed to independently review Plaintiff's impairments for the new period of disability. The ALJ's decision, therefore, erroneously failed to comply with the appropriate standard of review and was not supported by substantial evidence necessitating a remand of this matter.

(*Id.*)

The Commissioner asserts that the ALJ complied with *Drummond* and *Earley*.  (Doc. No. 8 at 9.)

In a footnote, the Commissioner argues:

> The ALJ acknowledged the Sixth Circuit's decision in *Earley* but noted that the Agency had not issued a new Acquiescence Ruling, thus, he was bound by *Drummond*. Tr. 549. As will be explained more fully throughout the brief, the ALJ took a fresh look at the evidence and remained mindful of the prior ALJ's decision. Tr. 553-71. However, given the relatively short timeframe of six days, the ALJ adopted the prior ALJ's findings. Tr. 553-71. Therefore, "despite incorrectly citing *Drummond*, the ALJ properly applied the correct legal standards in a manner consistent with the Sixth Circuit's decision in *Earley*." *Civitarese v. Comm'r of Soc. Sec.*, No. 1:19-CV-2015, 2020 WL 4366077, at *13 (N.D. Ohio July 30, 2020).

(*Id.* at 9-10 n.6).

Towards the beginning of the decision, the ALJ set forth as follows, under a heading entitled

"Applicability of *Drummond* and *Dennard* Acquiescence Rulings to the Issues":

> Pursuant to *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) and Social Security Acquiescence Ruling (AR) 98-4(6), and because the claimant still resides in the State of Ohio and thus within the jurisdiction of the United States Court of Appeals for the Sixth Circuit, the undersigned **may be bound** to the residual functional capacity and other "required findings" in ALJ Mary Lohr's June 24, 2016 administratively final decision unless there is "new and material evidence" of current record that warrants any more (or less) restrictive functional limitations. *Drummond* essentially applied the principle of administrative *res judicata* against the Commissioner in holding that, absent evidence of improvement in a claimant's condition or other changed circumstances since the prior adjudicated period, a later adjudicator should be bound to make the same finding of residual functional capacity. AR 98-4(6) then extended application of the *Drummond* holding to other "required" findings in the applicable disability sequential evaluation process, which are recounted in

17

> the next section of this decision. Thus, the undersigned must expressly account for "the *Drummond* AR" when making findings along the herein-defined sequential evaluation process.[1]

(Tr. 549) (emphasis added).  In the footnote, the ALJ went to state:

> The undersigned expressly acknowledges that, on June 27, 2018, the Sixth Circuit Court of Appeals issued a decision in *Earley vs. Commissioner of Social Security*, 893 F.3d 929 (2018), that discussed and clarified its previous holding in *Drummond*. However, as of the date of this decision, the Commissioner of Social Security has not issued a new Acquiescence Ruling relating to the Sixth Circuit's holding in *Earley*. **Consequently, while the holding in *Earley* has been considered, the undersigned remains bound by duty to the Commissioner to apply the instructions within the *Drummond* AR to the claimant's current applications.**

(*Id.* at n.1) (emphasis added).

Throughout the first, second, and third steps in the sequential evaluation, the ALJ further found as follows:

- "Regrettably, this is an exceedingly short period of merely six days for the claimant to establish that she was disabled. . . . Still, the undersigned assures that all specified directives in the Appeals Council's order have been duly considered, as shown in the remaining Findings where appropriate, with the maximum extent of evidence relatable to the period through the date last insured considered—**but, importantly, without reconsidering, reinterpreting, or otherwise recharacterizing any of the evidence discussed by ALJ Lohr from the records available to her at the time of her decision, which would not be appropriate for a later adjudicator to substitute one's judgment."**

- "Pursuant to the *Drummond* AR and no "new and material evidence" shown in the record relating to the very short period for adjudication, albeit in a streamlined fashion compared to the prior ALJ's list of specific diagnoses, the undersigned has adopted the Finding of the claimant's severe impairments (*see* Ex. C1A/8)."

- "As to fibromyalgia, and herein considering the Appeals Council's second item of remand, **the undersigned cannot apply the *Drummond* AR herein** because the criteria of Listings 1.18 (commuted from reference to now obsolete Listing 1.02 contained within SSR 12-2p) and of Listing 14.09 (A criterion) have been changed in the regulations after the date of the prior ALJ's decision.[]"

(*Id.* at 552-53, 556) (emphasis added in bold; other emphasis in original).

In the RFC analysis, the ALJ further found as follows:

The prior ALJ's decision supported such Finding of residual functional capacity for a range of sedentary exertion work with a detailed analysis of objective medical evidence, factors relating to the claimant's medications and other treatments used for managing symptoms including pain and anxiety and depression, a September 2014 report of consultative psychological examination held in connection with the prior Title II application, and medical opinion evidence (*see* Ex. C1A/16-23). Of further note, the evidence within the prior administrative record and cited in the prior ALJ's analysis extended through April 2016 office treatment records from Dr. Christopher Stiff and through a January 2016 office note from Dr. Inderprit Singh (*see* Ex. C1A/30).

As stated in the opening section of this decision, nothing "new" in the way of medical evidence relating to the period subject to ALJ Lohr's decision has been introduced in the current period, or at the very least nothing in the last 18-month period leading up to the date of that decision (*i.e.,* January 2015). Unfortunately, given the exceedingly short timeframe at issue in this current claim and hearing decision, there is also no new medical evidence until after the June 30, 2016 date last insured. Nonetheless, having considered such evidence from later 2016 and even extending into year 2017, albeit technically post-dating the period for adjudication, the undersigned has found nothing "material" even within such medical evidence to substantiate any greater exertional, physical nonexertional, workplace environmental, or mental limitations beyond those contained in the prior ALJ's decision that, it bears repeating, is merely six days before the date last insured. Accordingly, with all that follows in this Finding as support for such conclusion, and while only making adjustments to ALJ Lohr's terminology used for expressing the claimant's maximum remaining abilities in two areas of work-related mental functioning, **the undersigned has in essence adopted the prior ALJ's decisional finding of the claimant's residual functional capacity** for the limited period extending through the date last insured, **pursuant to the applicable *Drummond* AR.**

(*Id.* at 563) (emphasis added).

In analyzing the opinions of the state agency medical consultants, the ALJ further found as follows:

The record contains no affirmative prior administrative medical finding from a State agency psychological consultant (PC), as both Janet Souder, Psy.D., and Karen Terry, Ph.D., had purportedly found insufficient medical and other evidence to allow them to make any such finding on their respective initial (December 14, 2017) and reconsideration (March 16, 2018) reviews of the record (*see* Ex. C3A/6-7; C5A/7). Of additional note, initially reviewing State agency MC Stephen Sutherland, M.D., had also purported to find insufficient medical and other evidence to allow him to

19

make administrative medical findings—even as to whether the claimant's previously medically determined impairments of fibromyalgia, POTS, osteoarthritis, and small fiber peripheral neuropathy remained "severe" for the period of six days from the prior ALJ's decision through the June 30, 2016 date last insured (Ex. C3A/5-6). Respecting these State agency consultants' stated reasons for being reluctant to offer administrative medical findings, the undersigned has clearly disagreed herein given the directly applicable *Drummond* AR to a very short period for review and, while certainly post-dating by six months to nine months, does concur with the other State agency MC that the December 2016 and March 2017 office notes from the claimant's physicians should be considered as "new" medical evidence in reasonable proximity to the binding date last insured and, as such, allowing to make administrative findings along the sequential evaluation and in light of the prior ALJ's relevant decisional Findings.

On March 19, 2018, State agency MC William Bolz, M.D., reviewed the available medical and other documentation at the reconsideration stage of this claim, along with the prior ALJ's decision from June 24, 2016. Dr. Bolz disagreed with his counterpart's finding insufficient medical and other evidence and instead found that the evidence supports that the claimant's physical impairments assessed in the prior ALJ's decision remained "severe" but still did not meet or medically equal a listing through the date last insured. Dr. Bolz then found that the prior ALJ's finding of claimant's physical residual functional capacity should not be adopted and found that, through the date last insured—and thus over a period of merely six days—the claimant had a <u>greater</u> functional capacity to perform the full exertional range of light work, without any nonexertional limitations including in postural positionings and environmental tolerances (Ex. C5A/7,8,9).

Dr. Bolz's administrative medical findings as to continuing severity but non-listing level, and no possible medical equivalent severity, of the claimant's medically determinable impairments assessed in the prior ALJ's decision are **persuasive**. However, his rationale for discarding the prior ALJ's finding of residual functional capacity for a range of sedentary work conveys a disregard for the *Drummond* AR via his statement that finding "new and material changes" lies in his substitution of the prior ALJ's judgment for his own opinion that "the medical evidence from the relevant time period for this filing does not support the severity of limitations give[n]" (Ex. C5A/9). Dr. Bolz attempted to explain this by stating, albeit very generally, that he acknowledged the very limited timeframe for him to consider between the prior ALJ's decision and the binding date last insured, he also acknowledged the much larger period having greater evidence that "may have supported the more restrictive" residual functional capacity as found by the prior ALJ, but he found the medical evidence for the "current relevant time period which is more restricted does not support the same limitations" (*Id.*). This rationale simply does not follow and serves as a

> standalone reason to find his assessment of greater exertional capacity and unlimited nonexertional abilities to be poorly supported and **unpersuasive**. Furthermore, while no additional period-relevant medical evidence has been introduced at the extended hearing stage of this claim to render his opinion inconsistent with the expanded record, the evidence that he reviewed neither supports his statement that any evidence in late 2016 or early 2017 supports any significant medical or functional improvement to the extent shown in his finding for the full range of light exertion work.

(*Id.* at 568-69) (emphasis in original).

In *Drummond*, the Sixth Circuit held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Drummond v. Commissioner of Social Security*, 126 F.3d 837, 842 (6th Cir. 1997) (relying on *Senters v. Sec'y of Health & Human Servs.*, No. 91–5966, 1992 WL 78102 (6th Cir. Apr. 17, 1991) (per curiam). *See also Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 425 (6th Cir. 2015). In response, the Commissioner issued AR 98-4(6), which bound ALJs deciding a second disability claim to the prior ALJ's findings "unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." 1998 WL 283902, at *3.

The Sixth Circuit clarified the scope of *Drummond* in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018). *Earley* made clear that new regulatory framework for determining disability is a changed circumstance justifying departure from a prior ALJ's ruling, and explicitly stated that because "human health is rarely static. . . . Any earlier proceeding that found or rejected the onset of a disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date." *Earley*, 893 F.3d at 932-33.

Here, the relevant period consists of a six-day period from June 25, 2016, the alleged onset date, to June 30, 2016, Bowker's date last insured. This period post-dates the time frame considered by ALJ Lohr when the June 24, 2016 decision was issued. The Sixth Circuit's guidance in *Earley* makes clear that *res*

21

*judicata* cannot properly be applied to this case, as it covers a different time period than Bowker's prior application.

This Court recently discussed the application of *Drummond* and *Earley* in analogous circumstances, and where counsel for the parties raised similar arguments:

> Some district courts have interpreted *Earley* as the Commissioner does in this case, to mean that the ALJ must simply review the evidence for the new relevant time period to see if the prior RFC must change to accommodate it. *See* Doc. 15, at 8; *Williams v. Comm'r of Soc. Sec.*, 2019 WL 3356666 at *8 (N.D. Ohio) ("Because it is apparent the ALJ took a fresh look at the new evidence accruing from the time-period post-dating the prior unfavorable decision, the ALJ's decision to adopt the same mental restrictions as existed in the prior RFC did not offend any of the principles set forth in *Earley*."); *Brent v. Comm'r of Soc. Sec.*, 2018 WL 5118598, at *4 (E.D. Mich.), *report and recommendation adopted*, 2018 WL 4403418. The ALJ in this case complies with this understanding of *Earley*, by considering the new evidence with the old RFC as her starting point, and doing so in some depth. *See* Tr. 13-14, 18-21.

> But other district courts have read *Earley* to mean a claimant is entitled to review absent the presumption that the prior RFC remains the correct RFC for the subsequent claim. *See, e.g., Hogren v. Comm'r of Soc. Sec.*, 2020 WL 830401, at *4 (S.D. Ohio), *report and recommendation adopted*, 2020 WL 1140058 ("Thus, notwithstanding the new and additional evidence before her, ALJ Southern did not simply treat ALJ Flebbe's decision as a 'legitimate, albeit not binding consideration' as *Earley* directs, but rather explicitly concluded that ALJ Flebbe's previous evaluation of Plaintiff's medical records was binding."); *Ferrell v. Berryhill*, 2019 WL 2077501, at *5 (E.D. Tenn.) ("The point of *Earley*, in this Court's opinion, is that regardless of her chances of success, an applicant should have the opportunity for a full hearing, with no presumptions applied, when the claim covers a new period of time not addressed in the prior hearing."); *Dunn v. Comm'r of Soc. Sec.*, 2018 WL 4574831, at *3 (W.D. Mich.) ("In performing this analysis, ALJ Jones' decision was essentially a review of ALJ Moscow Michaelson's RFC findings ... rather than a 'fresh review' of plaintiff's 'new application for a new period of time.' "); *Gale v. Comm'r of Soc. Sec.*, 2019 WL 8016516, at *5 (W.D. Mich.), *report and recommendation adopted*, 2020 WL 871201 ("In sum, *Earley* stands for the proposition that when an ALJ evaluates a subsequent application for benefits, covering a distinct period of time, the ALJ can properly consider a previous ALJ's RFC assessment and errs only when he considers the previous RFC a mandatory starting point for the analysis.").

These courts have the better understanding of *Earley*. Following the Sixth Circuit's logic, Plaintiff's present SSI claim is for January 5, 2016 (Tr. 13) through November 29, 2018, (Tr. 23)[]. This claim is entirely distinct from Plaintiff's prior SSI claim, which ended on December 31, 2015, when the ALJ issued a written decision denying that claim. (Tr. 76); *Earley*, 893 F.3d at 933 (quoting *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998)) ("Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994.").

Even if little to no new evidence is presented for a second application, the prior ALJ decision does not bind the subsequent ALJ. *Earley*, 893 F.3d at 933. This case, however, has a great deal of new evidence, including a spinal fusion surgery and two psychological hospitalizations. (Tr. 652, 662, 745-97, 945-69) And the ALJ considered this new evidence (Tr. 19-20), but from a starting point of evaluating whether it was compatible with the prior RFC (Tr. 13-14). That violates the statutory framework governing disability claims. *Willis v. Sullivan*, 931 F.2d 390, 397 (6th Cir. 1991) ("A claimant, with each claim she brings for an unadjudicated time period, is entitled to a *de novo* review of the medical evidence.") (citing 42 U.S.C. § 405(b)). And the *Earley* court recognized nothing in the statute permits deviating from that standard when a claimant has previously been denied. *Earley* 893 F.3d at 933 ("When an individual seeks disability benefits for a distinct period of time, each application is entitled to review. There is nothing in the relevant statutes to the contrary.").

Here, the ALJ did not give the evidence a fresh look to determine Plaintiff's RFC, and for that reason, the case must be remanded. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) ("Howard's RFC is to be an 'assessment of [her] remaining capacity for work' once her limitations have been taken into account ... It is an assessment of what Howard can and cannot do".) (citing 20 C.F.R. § 416.945). It is possible the ALJ will come to the same conclusion as she did in the decision being reviewed now. But Plaintiff remains entitled to a full hearing with additional procedural burden to overcome, and she has not gotten that yet. *Earley*, 893 F.3d at 934 ("All roads in the end lead to this destination: The ALJ should have another opportunity to review the application under the correct standard."); *Ferrell*, 2019 WL 2077501, at *6 ("The application of the presumption in AR 98-4(6), interpreting *Drummond*, creates an unwarranted procedural burden for claimants at the second hearing ... the Court finds Plaintiff is entitled to a new hearing"). Thus, the ALJ should review Plaintiff's records again, but without a presumption that the prior RFC remains the proper RFC.

*Dilauro v. Commr. of Social Sec.*, Case No. 5:19 CV 2691, 2020 WL 9259708, at **9–10 (N.D. Ohio

Nov. 19, 2020) (footnote omitted), *report and recommendation adopted by* 2021 WL 1175415 (N.D. Ohio

Mar. 29, 2021).

> In overruling the Commissioner's objections to the R&R, the Court found:

>> The Court disagrees. The ALJ's opinion stated at the beginning that "no new and material evidence exist[ed] to justify not adopting the residual functional capacity from the previously adjudicated period."[] It is hard to imagine a clearer example of "considering the previous [residual functional capacity finding] a mandatory starting point" for a new claim.[]

>> Indeed, the Drummond error permeated the entire adjudication of Plaintiff's claim. Though the ALJ discussed subsequent developments in Plaintiff's medical history, the ALJ gave "great weight" to state medical consultant opinions that themselves relied on Drummond to adopt the prior ALJ's residual functional capacity finding.[] And notably, each of these examinations preceded both Earley and the most significant developments in Plaintiff's medical history since her previous claim—her May 2017 spine surgery and her October 2017 and August 2018 mental health hospitalizations.[]

>> The record accordingly contradicts the Commissioner's argument that the ALJ gave Plaintiff's claim the "fresh look" Earley requires.[] The ALJ must do so on remand.

2021 WL 1175415 at **3–4 (footnotes omitted).

The Court acknowledges that the ALJ's opinion, and as such, the ALJ's application of *Drummond*,

is not a model of clarity. The Court further acknowledges that a very short period of time is at issue here,

and that the period of adjudication starts the day after the previous ALJ's decision. However, based on the

statements regarding *Drummond* and the essential disavowal of *Earley* (Tr. 549, 552-53, 563), the Court

agrees with the *DiLauro* decision "that the Drummond error permeated the entire adjudication of

Plaintiff's claim." 2021 WL 1175415 at *4. "Even if little to no new evidence is presented for a second

application, the prior ALJ decision does not bind the subsequent ALJ." 2020 WL 9259708 at *10. It is

possible the ALJ will come to the same conclusion on remand. *Id.* But Bowker is entitled to a hearing

without the additional procedural burden of overcoming the application of the presumption in AR 98-4(6),

and she has not gotten that yet.  *Id.*  As the record "contradicts the Commissioner's argument that the ALJ gave Plaintiff's claim the 'fresh look' Earley requires," this matter must be remanded.  2021 WL 1175415 at *4.

As this matter is being remand on this issue, in the interest of judicial economy, the undersigned will not address Bowker's additional assignments of error.

## VII.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is VACATED AND REMANDED for further consideration consistent with this opinion.

**IT IS SO ORDERED.**

Date: February 22, 2024                              _s/ Jonathan Greenberg_
                                                     Jonathan D. Greenberg
                                                     United States Magistrate Judge